IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JASON WILLIAMS, JAMES JOBE, and DASHA FOX, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| FCA US LLC, | ) ) |
| Defendant. | ) ) |

Case No. 17-CV-00844-W-DW

# ORDER

This case arises from an alleged heating and cooling defect in Chrysler Jeep Wranglers. Now pending before the Court is Defendant FCA US LLC's ("FCA") Motion to Dismiss First Amended Class Action Complaint Pursuant to Rules 12(B)(1) and 12(B)(6) (the "Motion"). See Doc. 20. The named Plaintiffs Jason Williams ("Williams") and Dasha Fox ("Fox") (collectively, the "Plaintiffs")[1] filed suggestions in opposition (Doc. 32), and FCA filed a reply brief (Doc. 40).

After reviewing the record and the parties' arguments, the Court finds that Plaintiffs' claim for breach of implied warranties, and for negligence, should be dismissed for failure to state a claim. The Court further finds that Plaintiffs have adequately stated a claim for breach of express warranties, for violation of the Magnuson-Moss Warranty Act, and for violation of the Missouri Merchandising Practices Act. Consequently, and for the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] Named Plaintiff James Jobe voluntarily dismissed his claims without prejudice on March 15, 2018. Docs. 39, 41.

## I.[2]

Plaintiffs' Amended Complaint alleges that FCA manufactured and/or sold defective model year 2012-2017 Chrysler Jeep Wranglers ("Jeep"). Plaintiffs allege that the defect "consists of a reaction between the manufacturer-installed coolant and the aluminum components in the engine, namely those comprising the Cooling System. [T]he Defect can be exacerbated by the presence of flux left over from fabrication of the radiator. The Defect results in the build-up of sludge within the heater core and other components of the Cooling System." Amend. Compl., ¶ 2. The sludge build-up then damages the heater core and cooling system, and impairs "heating, cooling, and defrost functions." Id., ¶ 4.

Plaintiffs allege the defect is covered by a Basic Limited Warranty (the "Basic Warranty"), and by a Powertrain Limited Warranty (the "Powertrain Warranty"). The Basic Warranty provides "bumper to bumper coverage for 3 years or 36,000 miles." Id., ¶ 29; Doc. 21, p. 10. This warranty covers everything other than tires and headphones. Doc. 21, p. 10. The Powertrain Warranty does not cover as many items but does cover (among other things) the engine, the "[c]ylinder block and all internal parts." Id., p. 10-11. The Powertrain Warranty provides coverage for "5 years or 100,000 miles." Amend. Compl., ¶ 29. Plaintiffs allege that FCA wrongly refuses to repair the defect under either warranty.

Plaintiffs filed this case as a putative class action on behalf of "[a]ll persons who purchased or leased a 2012-2017 Chrysler Jeep Wrangler in the State of Missouri." Id., ¶ 69. The Amended Complaint asserts the following claims: Breach of Express Warranties (Count I); Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Count II); Breach of

---

[2] The following facts are taken from Plaintiffs' First Amended Class Action Complaint (the "Amended Complaint" or "Amend. Compl.") (Doc. 14), without further quotation or attribution unless otherwise noted. Only those facts necessary to resolve the Motion are discussed below, and those facts are simplified to the extent possible. Any page number cited herein refers to the pagination automatically generated by CM/ECF.

Implied Warranties (Count III); Negligence (Count IV); and Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 et seq. (Count V). Id., ¶¶ 83-118. Plaintiffs request various forms of relief, including damages, equitable relief, and attorneys' fees.

FCA now moves to dismiss this case under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case for lack of subject matter jurisdiction. Rule 12(b)(6) provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. The parties' arguments are addressed below.

II.

FCA's first argument is that subject matter jurisdiction is lacking because Plaintiffs fail to adequately allege standing. "Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011). The "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citations and quotations omitted).

"A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on [the] factual truthfulness of its averments." Carlsen v. GameStop, Inc., 112 F. Supp. 3d 855, 860 (D. Minn. 2015). If—as in this case—the defendant presents a facial challenge, the standard of review "is the same standard we apply in Rule 12(b)(6) cases." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). Under the 12(b)(6) standard, all factual allegations in the complaint are assumed to be true, but no

weight is afforded to conclusory allegations.  Id.  "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right."  Id.

To resolve the standing issue, the Court analyzes whether Plaintiff Williams, the first named Plaintiff, has adequately alleged each standing element.  In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017) ("A putative class action can proceed as long as one named plaintiff has standing.").

The first element is whether Williams adequately alleges an injury in fact.  The parties only briefly address this element, and the Court finds that it is easily satisfied.  Specifically, in May 2012, Williams purchased for personal use a new 2012 Jeep.  Amend. Compl., ¶ 31.  In the winter of 2014, with approximately 9,000 miles on the vehicle, Williams tried to use the Jeep's heater.  Id., ¶ 34.  Despite being on the warmest setting, one side of the vehicle emitted only warm air while the other side "emitted blazing hot air."  Id.

Williams then "read online forums describing the Defect and how flushing the vehicle could temporarily alleviate the heating issue."  Id., ¶ 35.  Williams flushed the radiator himself, and a "sludge-like residue was emitted from the radiator."  Id.  After flushing the vehicle and adding new coolant, Williams' vehicle "warmed well and evenly on both sides[.]"  Id.  The initial flush, however, only provided temporary relief.  Williams' vehicle subsequently required "multiple radiator flushes to have any heat."  Id., ¶ 40.

In July 2015, with approximately 15,000 miles on the vehicle, Williams spoke to a Service Advisor at the Gladstone Dodge Chrysler dealership.  Williams asked "if they could

remedy the issues he had been experiencing with his" Jeep. Id., ¶ 40.[3] Williams claims that the Service Advisor denied knowledge of the defect and did not repair it under warranty. See id., ¶¶ 39-41 (alleging in part that the service advisor said "they might offer a discount for the repairs depending upon the outcome of the diagnostic"). The heating defect alleged by Williams, along with FCA's alleged refusal to honor the warranties, satisfies the "injury in fact" element.

The second element is whether the defect "is fairly traceable to the challenged conduct of" FCA. The conduct at issue is FCA's designation and use of a coolant that negatively reacts with aluminum components and causes sludge build-up. In particular, Williams alleges that "a chemical reaction occurs when the factory installed system coolant chosen by [FCA] reacts with the Class Vehicles' aluminum engine and Cooling System components. This reaction is exacerbated if it occurs in the presence [of] flux remaining from the fabrication process of any of the aluminum components. The result of the chemical reaction is the formation of a sludge that damages key components of the Cooling System, namely the heater core, to fail." Id., ¶ 22. Williams also contends that FCA knew or should have known of this chemical reaction by 2011 when it conducted pre-sale testing. Id., ¶ 5.

Williams also alleges that the defect is common and well-known. He claims that many other Jeep owners have made complaints: (1) directly to FCA; (2) to the National Highway Traffic Safety Administration ("NHTSA"); and (3) on internet message boards. Id., ¶¶ 26-28. By way of example, one individual reported that their 2012 Jeep had a heating problem, that the "dealer says radiator and heater core need to be replaced as they are filled with 'sludge,'" and that online research suggests "this seems to be an all to[o] common issue with these jeeps." Id.,

---

[3] In support of its motion to dismiss, FCA incorrectly argues that "FCA US did not make even one repair to the vehicle[] owned by Plaintiff[] Williams . . . because [he] ***never asked for any repair***." Doc. 21, p. 20 (emphasis in original).

p. 13 (NHTSA Complaint, Dec. 3, 2014).  Overall, the allegations in the Amended Complaint show that Williams' injury "is fairly traceable to the challenged conduct of the defendant."

FCA argues the injury is not fairly traceable because Plaintiffs failed to plead "that it was FCA US's alleged use of a coolant that reacted with aluminum to create a sludge, ***and not something else***, that caused the cooling-system failures in their vehicles." Doc. 40, p. 5 (emphasis in original); see also Doc. 21, p. 17 (arguing that Plaintiffs were required to plead "that sludge can only develop from a chemical reaction").  FCA also contends that Plaintiffs failed to plead that their vehicles were "diagnosed" or "ever been found to have developed a sludge buildup *as the result of* coolant reacting with aluminum components[.]" Doc. 21, p. 16-17 (emphasis in original).

FCA's arguments demand far more specificity than what is required under Federal Rule 8 and applicable case law.  Fed. R. Civ. P. 8(a)(2) (providing that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (requiring that a claim must contain "sufficient factual matter" to demonstrate "facial plausibility").  A formal "diagnosis" or scientific proof of the defect is not required at the pleading stage.  Stalley, 509 F.3d at 521 (recognizing that a plaintiff only needs to "plausibly" show he has standing).

Williams is also not required to plead facts that exclude any and all other possible causes of the sludge. As explained by the Eighth Circuit, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which Iqbal and Twombly explicitly reject." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 597 (8th Cir. 2009); Minneapolis Firefighters'

Relief Ass'n v. Medtronic, Inc., 2010 WL 11469576, at * 8 (D. Minn. Feb. 3, 2010) ("At the pleading stage, Plaintiffs are not required to eliminate every other potential cause[.]").

The third and final element is whether Williams' injury is likely to be redressed by a favorable judicial decision. This element is also satisfied. A favorable judicial decision would result in Williams receiving damages for his defective Jeep. See Amend. Compl., ¶¶ 68, 118. For all these reasons, Williams has adequately alleged all three standing elements.[4] FCA's motion to dismiss for lack for subject matter jurisdiction is therefore denied.

## III.

Because the Court has jurisdiction, the next issue is whether any count should be dismissed under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6); City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007) ("[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit"). To avoid a Rule 12(b)(6) dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A claim should be dismissed if the plaintiff only pleads "labels and conclusions or a formulaic recitation of the elements of a cause of action[.]" Id.

### A.

Count I asserts a claim for breach of express warranties. Amend. Compl., ¶¶ 83-90. This claim contains the following elements: "(1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to

---

[4] Although this Order focuses on Williams, the Court finds that named Plaintiff Dasha Fox has also adequately alleged standing.

that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion." Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 85 (Mo. Ct. App. 2011) (citations and quotations omitted).

FCA primarily argues that this claim should be dismissed because the Basic Warranty and Powertrain Warranty are not applicable. The Basic Warranty is limited to 3 years or 36,000 miles, whichever occurs first. Williams alleges that he purchased his vehicle new on May 26, 2012, but did not first present his vehicle to a dealership for repair until July 2015. Amend. Compl., ¶¶ 31, 39-40. Fox expressly alleges that her vehicle had over 50,000 miles at the time she purchased it. Id., ¶ 50. Under these facts, FCA argues that neither Williams nor Fox can rely on the Basic Warranty.

Plaintiffs, however, have also alleged that the "time limits on [the] warranties are unconscionable" and should be tolled. Id., ¶ 89. The Amended Complaint contains various allegations in support, including that FCA "knew or had reason to know that Plaintiffs and Class Members might not experience or detect sludge-like build-up in the early life of the Jeep and, in many instances, detection of the Defect would only occur once the Cooling System stopped working properly after the warranty period had expired." Id., ¶ 89; see also id. at ¶¶ 3, 5-6, 23, 60-61, 77. Based on these allegations, the Court will not dismiss the Basic Warranty claim and allow Plaintiffs to conduct discovery on it.

Regarding the Powertrain Warranty, FCA contends that it "expressly provides coverage for repairs of only the specifically listed components . . . Plaintiffs expressly allege that damage which occurs is to 'cooling system components,' and, in particular, the heater core. The heater core is not a component covered by the Powertrain Limited Warranty." Doc. 21, p. 20-21 (citations omitted).

This argument is rejected. The Powertrain Warranty covers the engine, including the "[c]ylinder block and all internal parts." Doc. 21, p. 11. Plaintiffs allege that "the Defect consists of a reaction between the manufacturer-installed coolant *and the aluminum components in the engine*, namely those comprising the Cooling System . . . the Defect can be exacerbated by the presence of flux left over from fabrication of the radiator." Amend. Compl., ¶ 2 (emphasis supplied).

These allegations adequately allege that engine components are defective and/or that such components cause a defect elsewhere. Even if the engine components are not defective, but ultimately cause damage to the heater core/cooling system, such components are at least arguably covered by the Powertrain Warranty. This Court finds that "a repair that looks only at the heating or cooling system problem is akin to putting duct tape over a broken window; fine for a day, but nothing remotely resembling an adequate permanent solution." Mooradian v. FCA US, LLC, 2017 WL 4869060, at * 3 (N.D. Ohio Oct. 27, 2017).

For these reasons, Plaintiffs have adequately stated a claim for breach of express warranty.[5] FCA's motion to dismiss Count I is denied.

B.

Count II asserts a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"). See 15 U.S.C. § 2301, et seq. The MMWA "does not create any implied warranty of merchantability itself, but rather is a vehicle for enforcing warranties created by state law." Owen v. General Motors Corp., 2006 WL 2808632, at * 6 (W.D. Mo. Sept. 28, 2006); see also Sipe v. Workhorse Custom Chassis, LLC, 572 F.3d 525, 530 (8th Cir. 2009) (recognizing that

---

[5] As with standing, the Court rejects FCA's arguments that Plaintiffs were required to plead causation with precision and/or to eliminate other potential causes of the sludge.

the MMWA "grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law") (citing 15 U.S.C. § 2310(d)).

In support of dismissing this claim, FCA argues that "[b]ecause Plaintiffs' state law warranty claims fail, so, too, does their MMWA claim." Doc. 21, p. 21. As discussed above, Plaintiffs have adequately stated a claim for breach of express warranty. For similar reasons, the Court finds that Plaintiffs have also adequately stated a MMWA claim. FCA's motion to dismiss Count II is therefore denied.

C.

In Count III, Plaintiffs assert a claim for breach of implied warranties. This claim has the following elements: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property[,] (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." Hope, 353 S.W.3d at 90 (citations and quotations omitted).

Regarding the second element, a plaintiff must adequately plead that the merchandise is not "fit for the ordinary purposes for which such goods are used." Id. at 89-90 (citations and quotations omitted). This means that the goods fail to "*satisfy a minimum level of quality.*" Id. at 90 (emphasis in original). If the merchandise at issue is a vehicle, "[p]laintiffs must adequately allege that their vehicles are not fit for safe driving and reliable transportation." Mooradian, 2017 WL 4869060, at * 7 (citations and quotations omitted).

Here, Plaintiffs do not allege facts that plausibly support a breach of implied warranty claim. The Amended Complaint expressly alleges that Plaintiffs Williams and Fox have driven their alleged defective Jeeps thousands of miles over several weather seasons. See, e.g., Amend. Compl., ¶¶ 31, 41, 53 (alleging that the heating problem "continued to occur during the entire

operation of the vehicle on that occasion and other occasions going forward"); 54 (alleging that "[d]uring the winter of 2016 and early 2017, [Fox] drove the vehicle with little or no heat"); 65 (alleging that consumers "continue to drive them in their defective and unsafe state").

These allegations show that the vehicles at least "satisfy a minimum level of quality" and provide adequate means of transportation. Hope, 353 S.W.3d at 90; see also In re General Motors Corp., 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) (dismissing implied breach claim in part because "Plaintiffs have not alleged brake failure or that they have stopped driving their vehicles because of the defects"). "Plaintiffs' allegations of intermittent heating and air conditioning failure 'while certainly an annoyance, did not interfere with their ability to drive their cars.'" Mooradian, 2017 WL 4869060, at * 7 (alterations omitted).[6]

For all these reasons, the Court finds that Plaintiffs have not stated a claim for breach of implied warranty of merchantability. Count III is therefore dismissed.

### D.

In Count IV, Plaintiffs assert a negligence claim. Citing applicable case law, FCA argues that "Missouri's economic loss doctrine bars recovery for negligence . . . where the only damage is to the product sold." Doc. 21, p. 25 (citing and quoting cases). Plaintiffs' opposition brief does not argue that this claim is viable and should not be dismissed. See generally Doc. 32.

"A plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims." See Jarrett v. Henkel Corp., 2016 WL 409819, at * 2

---

[6] Plaintiffs only summarily allege that the heating and cooling defects make it unsafe to operate their vehicles. See Amend. Compl., ¶ 24. This allegation, however, is conclusory and not entitled to any weight. Iqbal, 556 U.S. at 678 (recognizing that "labels and conclusions" do not state a claim). For example, Plaintiffs fail to identify a single date or date range in which they were unable or unwilling to drive their vehicles. Their conclusory allegation is also inconsistent with Plaintiffs' specific and detailed allegations about driving their vehicles over an extended period of time. Although the Court identified a safety issue for the purpose of establishing a discovery protocol (Doc. 38), the Amended Complaint does not state facts that plausibly support a breach of implied warranty claim.

(W.D. Mo. Feb. 2, 2016). Consequently, for the reasons stated by FCA, and because Plaintiffs failed to oppose those reasons, Count IV is dismissed.

E.

In Count V, Plaintiffs assert a claim under the Missouri Merchandising Practices Act ("MMPA"). See Mo. Rev. Stat. § 407.020, et seq. To state a claim under the MMPA, Plaintiffs must adequately plead that they: "(1) purchased [their vehicle]; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by section 407.020." Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 773 (Mo. banc 2007). "Section 407.020 bars a variety of conduct, including concealment, suppression or omission of any material fact in connection with the sale of merchandise[.]" Id.

"The MMPA has been recognized as broad, highly paternalistic legislation designed to protect those that could not otherwise protect themselves." Faltermeier v. FCA US LLC, 2016 WL 4771100, at * 5 (W.D. Mo. Sept. 13, 2016) (citations and quotations omitted). Based on this broad reach, and viewing the allegations in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately stated a claim under that statute.

Specifically, the Amended Complaint adequately alleges that "FCA knew or should have known of the Defect. Plaintiffs alleged FCA gained (or should have gained) this knowledge in late 2011 based on pre-sale testing. FAC ¶ 5, and certainly by mid-2012 also based on complaints from numerous consumers, via its authorized dealers and through public sources. Id. ¶¶ 26-28. Further, Plaintiffs sufficiently allege the facts surrounding FCA's knowledge of the persistent sludge in the cooling systems of its Pentastar engines installed in the Class Vehicles w[ere] almost exclusively in FCA's purview. This is all that is required of Plaintiffs under

[Rule] 9(b) at this stage of the proceedings." Doc. 32, p. 19-20; White v. Just Born, Inc., 2017 WL 3130333, at * 8 (W.D. Mo. July 21, 2017) (recognizing that an MMPA omission claim must allege that "the defendant failed to disclose material facts that were known to him/her, or upon reasonable inquiry would have been known to him/her").

For these reasons, the Court denies FCA's motion to dismiss the MMPA claim.

IV.

For the foregoing reasons, it is hereby ORDERED that:

(1) Defendant FCA's Motion to Dismiss First Amended Class Action Complaint (Doc. 20) is GRANTED IN PART and DENIED IN PART;

(2) the Motion is GRANTED insofar as Plaintiffs' claims for breach of implied warranties (Count III), and for negligence (Count IV), are dismissed for failure to state a claim upon which relief may be granted; and

(3) the Motion is DENIED insofar as Plaintiffs have adequately stated a claim for breach of express warranties (Count I), for violation of the MMWA (Count II), and for violation of the MMPA (Count V).

IT IS SO ORDERED.

Date: April 16, 2018                    /s/ Gary A. Fenner for
                                        Dean Whipple
                                        United States District Judge